IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jacqueline B., ) | Case No.: 5:23-cv-06635-JD-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| Lee Dudek, Acting Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This social security matter is before the Court with the Report and Recommendation of United States Magistrate Judge Kaymani D. West ("Report and Recommendation" or "Report" or "R&R"), under Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff Jacqueline B.[1] ("Plaintiff") brings this action under 42 U.S.C. §§ 405(g), as amended, seeking judicial review of a final decision of Defendant Lee Dudek,[2] Acting Commissioner of Social Security Administration ("Defendant" or "Commissioner"), denying her Disability Insurance Benefits ("DIB") under the Social Security Act ("Act").

Having carefully considered Plaintiff's objection and the applicable law, the Court affirms the decision of the Commissioner.

---

[1]  The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, because of significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2]  Lee Dudek became the Acting Commissioner of Social Security on February 19, 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Lee Dudek as Defendant in this action.

1

## BACKGROUND

The Report sets forth the relevant facts and legal standards, which this Court incorporates here without a full recitation. (DE 23.) However, as a brief background relating to the objections raised by Plaintiff, the Court provides this summary.

Plaintiff was 57 years old at the alleged disability onset date, August 14, 2016. (Tr. 275.)[3] Plaintiff's disability claim is based on Plaintiff's lower lumbar condition, high blood pressure, diabetes, emphysema, chronic fatigue syndrome, anxiety/depression, shoulder condition, being morbidly obese, and Hepatitis B and C. (Tr. 375.) She has past relevant work experience as a restaurant general manager (Feb. 2000-Feb. 2007), restaurant delivery driver (March 2007-March 2009), and used car sales office manager (Sept. 2013-Aug. 2016). (Tr. 317.) On June 28, 2023, Plaintiff appeared with counsel for a third administrative hearing. (Tr. 714.)

In his August 18, 2023, Decision, the Administrative Law Judge ("ALJ") made these findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 14, 2016 through her date last insured of December 31, 2018 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: multilevel spondylosis of the cervical spine and lumbar spine; obesity; chronic obstructive pulmonary disease (COPD); and chronic pain syndrome (20 CFR 404.1520(c)).

---

[3] Citations to "Tr." refer to the Administrative Record, and the page numbers at the bottom right of the page. The Certified Administrative Record is available at DE 9-1 to 9-13 in this Social Security matter.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she cannot climb ladders, ropes, or scaffolds; she can occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; she must avoid concentrated exposure to smoke, fumes, odors, dust, gases, and poor ventilation; and she must avoid working at unprotected heights.

6. Through the date last insured, the claimant was capable of performing past relevant work as a restaurant general manager and office manager. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 14, 2016, the alleged onset date, through December 31, 2018, the date last insured (CFR 404.1520(f)).

(Tr. 689-90, 693, 696, 703, 705.) Plaintiff seeks judicial review of the ALJ's decision because (1) the ALJ failed to properly explain his Residual Functional Capacity ("RFC") findings as required by SSR 96-8p, and (2) the ALJ failed to properly assess medical source opinion evidence. (DE 23 at 14; *see also* DE 10 at 19, 30.) As for the medical source opinions, Plaintiff questions whether "the medical opinions by the Disability Determination Services medical consultants were not persuasive[.]" (DE 10 at 33.) Plaintiff says,

> The ALJ cited three medical records in support of his conclusion: November 2016, September 2017, and December 2017 (Tr. 702-703). Those medical records were considered by Dr. Saito and Dr. Simpson when making their professional determination that Burke was limited

3

> to sedentary work . . . The ALJ found Dr. Vest's opinion that Burke was unable to perform even the minimal standing, walking, and lifting required of sedentary work was not persuasive. He wrote that Dr. Vest's opinion regarding Burke's abilities was not consistent with the medical evidence as a whole, citing generally unremarkable clinical findings.

(DE 10 at 33) (internal citations omitted.)

The Magistrate Judge issued the Report on December 17, 2024, recommending the Commissioner's decision be affirmed. (DE 23.) As for the ALJ's RFC assessment, the Report found:

> The ALJ's analysis of the evidence provides a logical bridge between the evidence and his RFC findings. The court finds that the ALJ evaluated the medical evidence of record and, based on the entirety of the evidence he assessed Plaintiff's RFC.

(DE 23 at 24.) As for the ALJ's evaluation of medical source opinions, the Report found, among other things:

> it is clear from the ALJ's discussion that he not only considered the medical evidence cited by Drs. Saito and Burge, but he also considered other evidence of record that supported his findings. The ALJ's analysis comports with the regulations as he properly considered the supportability and the consistency of the opinions and provided an adequate explanation for why he found the opinions unpersuasive.
> ***
> the ALJ reviewed the record and provided a reasoned analysis of the weight given to Dr. Vest's opinion as required by the regulations. 20 C.F.R. § 404.1527(c). Having reviewed the decision in its entirety, along with the medical records, the undersigned finds the ALJ's evaluation of Dr. Vest's opinion is supported by substantial evidence and sufficient to allow meaningful judicial review.

(DE 23 at 28, 31.) On January 7, 2025, Plaintiff objected to the Report (DE 29), and Defendant replied in opposition (DE 31).

4

## **LEGAL STANDARD**

The magistrate judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection has been made, and may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(l). However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Absent any specific objection, the court only reviews the report and recommendation for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted); *see also Tyler v. Wates*, 84 F. App'x 289, 290 (4th Cir. 2003) ("A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object.")

The role of the federal judiciary in the administrative scheme established by the Social Security Act is limited. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."[4] 42 U.S.C. § 405(g). The court must uphold the Commissioner's

---

[4] "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). "It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

decision as long as it is supported by substantial evidence and reached through the application of the correct legal standard. *See Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). This standard precludes a de novo review of the factual circumstances that substitute the court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969).

"[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58. However, the court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Administrative Law Judge ('ALJ')]." *Johnson*, 434 F.3d at 653. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

## DISCUSSION

### A. Opinion Evidence Objection

Plaintiff objects to the weight given to State Agency physician's opinion evidence. Plaintiff contends, "the ALJ did not explain his rationale for the weight given to the opinions of the State Agency physicians, especially given the minimal evidence he cited in support of his decision.[]" (DE 29 at 1.) Plaintiff also maintains that "the explanation regarding Burke's ability to stand and walk six hours a day

6

lacks specificity or an explicit account of which evidence the ALJ relies upon that should supersede the opinion of an expert." (DE 29 at 1-2.) Plaintiff also argues that "[t]he ALJ also failed to consider how Dr. Vest's opinion that Burke would miss more than four days of work a month was consistent with the opinion of Dr. Anguelova, who also opined that Burke would not be able to sustain work efforts (Tr. 520)." (DE 29 at 2.)

Plaintiff says, "[t]he Magistrate concluded that 'it is clear' from the ALJ's discussion that the ALJ considered medical evidence cited by the state agency physicians as well as other evidence of record that supported his findings[.]" (*Id.*) Plaintiff disagrees with this conclusion and counters

> that it is not as clear as the Magistrate Judge suggests, especially regarding [Plaintiff's] ability to perform the standing and walking requirements of light work' and Plaintiff's 'ability to stand and walk six hours a day.'

(DE 29 at 1.) But the Report relies on evidence to support this conclusion. The Report says, for example:

> Dr. Saito determined that Plaintiff could occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk for a total of two hours, sit for about six hours in an eight-hour workday, and she had no limitations with pushing and/or pulling other than the lift and carry limitations. Dr. Saito opined that Plaintiff could occasionally climb ramps/stairs; never climb ladders/ropes/scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. She indicated Plaintiff had no manipulative, visual, or communicative limitations, but should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and environmental hazards.

(DE 23 at 26) (citations omitted.) The Report found that "Dr. Burge determined Plaintiff had the same postural limitations as indicated by Dr. Saito, and indicated Plaintiff was limited to frequent reaching right overhead." (*Id.* at 29.) To that end,

7

the Report says, "[t]he ALJ's analysis comports with the regulations as he properly considered the supportability and the consistency of the opinions and provided an adequate explanation for why he found the opinions unpersuasive." (DE 23 at 26) (citing *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *4 (4th Cir. 1999) (unpublished) ("The determination of a claimant's RFC and the application of vocational factors are reserved to the ALJ, who is not bound by medical opinion on these subjects.").)

Although the record shows opinions limiting Plaintiff to work at the sedentary level, the ALJ was not persuaded by the evidence. The Report cites the ALJ's findings:

> Overall, the limitations to lifting, carrying, and standing at the sedentary level are not warranted by the record, including the findings discussed above demonstrating that the claimant was able to ambulate independently. The mild gait abnormalities documented in the treatment record and the mild abnormalities of the upper extremities are more consistent with the ability to perform work activities at the light exertional level. The limitation on right overhead reaching has not been included because the only documentation of right upper extremity limits was during the consultative examination, other than the right wrist fracture, which does not meet the durational requirements. Moreover, the medical source(s) did not have a treatment relationship with the claimant, examine the claimant, or have a longitudinal understanding of the claimant's impairment(s).

(DE 23 at 27) (citing Tr. 703.) Since the Report examined the ALJ's review of the record and its analysis of the weight given to the State agency physicians' opinions as required by the regulations, 20 C.F.R. § 404.1527(c), the Court finds that substantial evidence supports the ALJ's consideration of the opinion evidence and overrules Plaintiff's objection.

Next, as to Plaintiff's primary care provider, Dr. James Vest's medical records, the Magistrate Judge cited the ALJ's findings:

> This opinion is internally inconsistent regarding whether or not the claimant's ability to lift and carry objects is limited. Notably, the significant limitations are not consistent [with] the medical evidence as a whole, including the generally unremarkable clinical findings documented in Dr. Vest's treatment notes and examinations by other treatment providers. For example, the claimant's orthopedist noted in September 2017 that the claimant had normal strength and no instability of the lumbar spine. She had normal range of motion, no midline defects and straight leg raising was negative bilaterally (Exhibits 9F and 17F). Additionally, the records supporting the determination that the claimant could ambulate independently without an assistive device, as discussed in more detail above, are inconsistent with the severity of the standing and walking limitations set forth in this opinion.

(DE 23 at 29) (citing Tr. 702.) On this point, the Report sets forth the following:

> In undertaking review of the ALJ's treatment of a claimant's medical sources, the court focuses its review on whether the ALJ's decision is supported by substantial evidence. It is well-settled that an ALJ "'must build an accurate and logical bridge from the evidence to his conclusion.'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).
>
> The regulations only require the ALJ to discuss consistency and supportability. 20 C.F.R. § 404.1520c(b)(2). Here, the ALJ's discussion acknowledges both of those factors noting inconsistencies in Dr. Vest's opinion with the medical evidence and his own treatment records. Plaintiff argues the ALJ did not consider a record that indicated she was prescribed Lasix for lower extremity edema, nor did he consider that Dr. Anguelova's opinion was consistent with Dr. Vest's opinion. Pl.'s Br. 34. First, ALJs are not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision. *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) ("[T]he ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it."); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted."); *Dyer v.*

9

> *Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (finding that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection" insufficient to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole). Second, the ALJ found Dr. Anguelova's opinion unpersuasive because it was not supported by the medical evidence. Plaintiff's arguments as to Dr. Vest's opinion invite the court to reweigh the evidence, but the court declines to do so. *See Hancock v. Astrue*, 667 F.3d 470, 471 (4th Cir. 2012) ("'In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ].'" (alteration in original) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005))).
>
> Here, the ALJ reviewed the record and provided a reasoned analysis of the weight given to Dr. Vest's opinion as required by the regulations. 20 C.F.R. § 404.1527(c). Having reviewed the decision in its entirety, along with the medical records, the undersigned finds the ALJ's evaluation of Dr. Vest's opinion is supported by substantial evidence and sufficient to allow meaningful judicial review. *Mastro v. Apfel*, 270 F.3d at 178.

(DE 23 at 30-31.) In light of the sufficiency of the Magistrate Judge's review of the ALJ's findings, and no requirement that the Magistrate cite each piece of evidence cited by Plaintiff, the Court finds that the ALJ's findings are supported by substantial evidence and overrules Plaintiff's objection on this point.

### B. RFC Objection

Plaintiff objects to the Report's finding that "the ALJ properly accounted for Plaintiff's cervical and lumbar spine issues both in his Listings analysis and in his discussion of his RFC assessment, and substantial evidence supports his findings." (DE 23 at 18.) Plaintiff insists the ALJ (as adopted by the Report) "merely recite[d] some facts (and ignore others) and ma[d]e conclusory statements in support of the RFC determination." (DE 29 at 4.) Upon a review of the record, the Court finds this objection unavailing.

10

The ALJ dedicated eight single-spaced pages of the decision to an explanation of why Plaintiff's treatment history, the objective examination findings, and her ability to perform a range of daily activities supported the RFC finding for light work with postural and environmental restrictions (Tr. 692-93, 698-703). In conclusion, the ALJ found:

> In sum, the above residual functional capacity assessment is supported by the weight of the evidence of record. There are no medical findings of sufficient severity to suggest that the claimant is unable to perform all work activity. There are positive findings that somewhat support the claimant's subjective symptoms and reported limitations. The claimant's medical record is positive for obesity, degenerative disc disease and chronic obstructive pulmonary disease. The restriction against concentrated exposure to hazards is based on the sedating nature of the claimant's pain medications. The pulmonary restrictions are based on the effects of the claimant's COPD. The exertional and postural limitations are based on the combined effects of the claimant's multiple impairments. While the medical evidence of record establishes the existence of the above-mentioned impairments, the objective evidence is not very impressive, and does not confirm that these impairments are of such severity that they could reasonably be expected to produce the degree of debilitating pain and functional limitations alleged.

(*Id.* at 703.) Accordingly, the Magistrate Judge explained that "[t]he ALJ's analysis of the evidence provides a logical bridge between the evidence and his RFC findings" (DE 23 at 24). Plaintiff's objections do not identify a legal error but rather highlight evidence she believes supports greater limitations than the ALJ found (DE 29 at 3-5). The ALJ acted as the factfinder to resolve conflicts in the record and independently formulated the RFC finding (Tr. 696-703). The Magistrate Judge correctly deferred to the ALJ regarding Plaintiff's RFC because it was supported by substantial evidence and properly explained (DE 23 at 14-24). Since this Court cannot reweigh

the evidence and the Report comprehensively and ably addresses Plaintiff's objections, the Court overrules them.

## CONCLUSION

For these reasons, the Court adopts the Report and Recommendation (DE 23) and affirms the Commissioner's decision.

**AND IT IS SO ORDERED.**

Florence, South Carolina
March 25, 2025

Joseph Dawson, III
United States District Judge